This Decision is a
Precedent of the TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451
General Contact Number: 571-272-8500

Winter

Mailed: December 1, 2014

Opposition No. 91212231

*Dragon Bleu (SARL)*

*v.*

*VENM, LLC*

Before Mermelstein, Bergsman, and Kuczma,
Administrative Trademark Judges.

By the Board:

VENM, LLC (hereafter "Applicant") seeks registration of the mark VENM in standard characters for "dance costumes."[1] Dragon Bleu (SARL) (hereafter "Opposer") opposes registration of the mark on the ground of likelihood of confusion. Applicant has filed a counterclaim on the grounds of fraud, nonuse, and abandonment, seeking to cancel Opposer's three pleaded registrations,[2] namely, U.S. Reg. Nos. 3896673,[3] 3927787,[4] and 4017907.[5]

---

[1] Application Serial No. 85848528, filed February 13, 2013, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

[2] Opposer's Registration No. 4574014, which issued after this proceeding was commenced based on Opposer's pleaded Application Serial No. 79124129, is not the subject of Applicant's counterclaims.

[3] U.S. Reg. No. 3896673, issued December 28, 2010, for the mark VENUM (and design), based on a request for extension of protection of International Registration

This case now comes up for consideration of Opposer's motions to dismiss Applicant's counterclaims to cancel Opposer's pleaded registrations under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[6]

Amended Pleading; First Motion to Dismiss Moot

A plaintiff or counterclaim plaintiff may amend its complaint once as a matter of course within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). Thus, the party in position of plaintiff in a proceeding before the Board (here, Applicant with respect to its counterclaim) ordinarily can respond to a motion to dismiss by filing an amended complaint. Insofar as Applicant filed an amended answer with an amended counterclaim within 21 days of Opposer's first motion to dismiss, we accept Applicant's amended answer and counterclaim as its operative pleading. Subsequently, Opposer filed a second motion to dismiss that addresses the amended counterclaim set forth in Applicant's amended answer. Accordingly, the first motion to dismiss is moot and we now consider the second motion to dismiss solely with respect to the amended counterclaim, to determine

No. 0988214, registered November 24, 2008, filed under Section 66(a) of the Trademark Act, 15 U.S.C. § 1141f(a).

[4] U.S. Reg. No. 3927787, issued March 8, 2011, for the mark VENUM (and design), based on a request for extension of protection of International Registration No. 0988214, registered November 24, 2008, filed under Section 66(a) of the Trademark Act, 15 U.S.C. § 1141f(a).

[5] U.S. Reg. No. 4017907, issued August 30, 2011, for the mark VENUM (and design), based on a request for extension of protection of International Registration No. 1060684, registered October 15, 2010, filed under Section 66(a) of the Trademark Act, 15 U.S.C. § 1141f(a).

[6] The motions were filed in lieu of an answer to the counterclaims.

whether it asserts claims upon which relief can be granted. *See Fair Indigo LLC v. Style Conscience,* 85 USPQ2d 1536, 1537 (TTAB 2007).

Second Motion to Dismiss

Opposer moves to dismiss Applicant's counterclaims with prejudice. To withstand a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff (here, Applicant as the counterclaim-plaintiff) need only allege sufficient factual content that, if proved, would allow the Board to conclude, or to draw a reasonable inference, that (1) the plaintiff has standing to maintain the proceeding, and (2) a valid ground exists for opposing or cancelling the registration. *Doyle v. Al Johnson's Swedish Restaurant & Butik Inc.,* 101 USPQ2d 1780 (TTAB 2012) (*citing Young v. AGB Corp.,* 152 F.3d 1377, 47 USPQ2d 1752, 1754 (Fed. Cir. 1998)); *Order of Sons of Italy in Am. v. Profumi Fratelli Nostra AG,* 36 USPQ2d 1221, 1222 (TTAB 1995); and TBMP § 503.02 (June 2014). Specifically, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In particular, the claimant must allege well-pleaded factual matter and more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. 662, *citing Twombly*, 550 U.S. at 555.

As a preliminary matter, we note that Applicant's allegation of standing is not disputed in the motion to dismiss. Moreover, it is clear that an applicant defending an opposition has standing to pursue a counterclaim. *See Ceccato*

*v. Manifattura Lane Gaetano Marzotto & Figli S.p.A.,* 32 USPQ2d 1192, 1195 fn.7 (TTAB 1994).

We therefore turn to address each ground for cancellation in turn.

I. *"Fraudulent Statements Made During Prosecution to Conceal Lack of Distinctiveness."*

Fraud in procuring a trademark registration occurs when an Applicant for registration knowingly makes a false, material representation of fact in connection with an application to register with the intent of obtaining or maintaining a registration to which it is otherwise not entitled. *In re Bose Corp.*, 580 F.3d 1240; 91 USPQ2d 1938, 1939 (Fed. Cir. 2009); *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483, 1484 (Fed. Cir. 1986). Fed. R. Civ. P. 9(b) provides that the circumstances constituting the alleged fraud shall be stated with particularity. *See also King Automotive, Inc. v. Speedy Muffler King, Inc.,* 667 F.2d 1008, 212 USPQ 801, 803 (CCPA 1981) (stating that "the pleadings [must] contain explicit rather than implied expressions of the circumstances constituting fraud"). Intent to deceive is an indispensable element of the analysis in a fraud case. *See In re Bose Corp.,* 91 USPQ2d at 1941. As such, intent to deceive the Office, whether to obtain a registration or to maintain a registration, is an element to be pleaded in a fraud claim. Nonetheless, intent, as a condition of mind of a person, may be averred generally. Fed. R. Civ. P. 9(b). *See also DaimlerChrysler Corp. v. American Motors Corp.*, 94 USPQ2d 1086, 1088 (TTAB 2010).

Applicant's claim of fraud comprises, in relevant part, the following allegations:

4

- The mark "VENUM" is not distinctive because "others make use of confusingly similar marks" (¶ 45);

- In the course of prosecuting the underlying application leading to Opposer's pleaded U.S. Reg. No. 3927787,[7] Opposer expressly stated that it would limit the registration of the mark to martial-arts-related goods, "which is the only reason that its mark was found distinctive" (¶ 46);

- Opposer's counsel "represented" that Opposer's mark (VENUM and design) is not likely to cause confusion with the then-cited registration for the mark VENOM "because both marks are specifically and narrowly directed to clothing used in connection with the entirely unrelated sports of skiing and martial arts respectively" (¶ 48a) and "as amended, [Opposer's] goods are limited to clothing used in connection with a particular sport, namely martial arts" (¶ 48b);[8]

- At the same time that Opposer was arguing that it would limit its use of the mark to martial-arts-related goods, on information and belief,

---

[7] Although Applicant seeks to cancel U.S. Reg. Nos. 3896673, 3927787, and 4017907, Applicant refers only to the application underlying U.S. Reg. No. 3927787 in this allegation.

[8] It is noted that attached to the amended counterclaim as Exhibit A is a copy of Opposer's request for reconsideration after final action (submitted to the USPTO on October 22, 2010), which includes the alleged false statements of Opposer). The file of each registration against which a petition or counterclaim for cancellation is filed forms part of the record of the proceeding without any action by the parties and reference may be made to the file for any relevant and competent purpose. *See* Trademark Rule 2.122(b)(1). With one exception inapplicable here, exhibits to pleadings may not be used by the filing party as evidence. Trademark Rule 2.122(c). Thus, it was not necessary for Applicant to submit separately a copy of the document.

Opposer "and/or its attorney" was planning to use the mark offensively against others who did not sell martial arts goods and, in particular, against those who sought registration of marks phonetically similar to "VENUM" outside of martial arts-related goods (¶¶ 47, 51);

- By filing this opposition, Opposer has "revoked" that agreement "to limit its mark" (¶ 46);

- "Opposer should not be allowed to argue that its mark is distinctive as it is restricted to martial arts goods and equipment and then use the same mark to oppose what it claims is a similar mark directed to dance costumes" (*id.*);

- VENM has been harmed by Opposer's securing registration of its marks (*id.*); and

- "The mark 'VENUM' reflected in U.S. Reg. Nos. 3896673, 3927787, and 4017907 is not distinctive [*sic*] as asserted by Opposer, and was only registered due to the fraudulent representations made by Dragon Bleu and/or its representatives during prosecution" (¶ 53).

Based on Applicant's arguments, we construe the allegation in paragraph 53 as asserting that it was only after restriction of Opposer's then-pending application that Opposer was able to sufficiently *distinguish* its mark from those of others in order to secure its registration.

Construing Applicant's allegations so as to do justice and in the light most favorable to Applicant as the non-movant on the motion to dismiss, we

find that Applicant fails to state a claim of fraud upon which relief can be granted for the following reasons. First, the alleged false statements, namely, that Opposer's mark is "specifically and narrowly directed to clothing used in connection with the sport of martial arts" and that its goods are "limited to clothing used in connection with a particular sport, namely martial arts," are not false statements. In other words, we do not understand the statements at issue as constituting representations that Opposer would not use or enforce its VENUM marks as to goods outside the martial arts-related clothing segment, but rather as simple statements of limitations Opposer agreed to during examination of what became its '787 Registration, in order to overcome the Section 2(d) refusal issued by the Examining Attorney. The statements to which Applicant refers were not false—the goods in Opposer's application were indeed so limited by the amendment.

We do not understand Opposer's limitation of the goods in its application as a promise that if the registration were to be granted, Opposer would assert it against others *only* with respect to the identified goods. The issuance of a registration for specified goods or services and the scope of protection to which that registration later may be entitled are not the same thing— registrations are frequently asserted against applications or uses involving non-identical goods. Thus, Applicant has not alleged any false statements on which a fraud claim in a Board proceeding can lie. Because a false statement is one of the critical elements in proving fraud, the fraud claim is insufficient.

*Swiss Watch Int'l v. Federation of the Swiss Watch Industry*, 101 USPQ2d 1731, 1746 (TTAB 2012).

Although the fraud claim must fail simply on the basis that Opposer made no false statement during the prosecution of its underlying application, we also address Applicant's allegations regarding the other elements of the ground of fraud. With respect to the requirement of materiality, it appears that Applicant's fraud claim is based on the premise that but for Opposer's "agreement" to limit its use of its mark or to limit its right to assert the prospective registration against others, Opposer's mark would not have been found distinguishable from the cited mark and would not have been approved by the Examining Attorney for registration.[9] Such a claim is not plausible. The Examining Attorney's determination of whether there is a likelihood of confusion was not based on what use Opposer planned to make of the mark upon registration, but was based on the identification of goods or services as set forth in the application. *See, e.g., Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002); and *Octocom Sys., Inc. v. Houston Computers Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). Thus, although Opposer did agree to modify its identification of goods to overcome the likelihood of confusion refusal, its effect was to limit the identification of goods, which was the only relevant consideration for the Examining Attorney. There is no basis on which we

---

[9] Even if we were to find that the Examining Attorney erred in accepting Opposer's arguments in favor of registration (and to be clear, we do not so find), there is no fraud absent an actually false statement.

8

could conclude that the Examining Attorney relied on Opposer's alleged "promise" to restrict its use or assertion of the mark because any such promise would not have been a material consideration during examination.

Finally, there is no allegation which constitutes a proper pleading of Opposer's intent to deceive the Patent and Trademark Office with respect to an issue affecting registration. *In re Bose Corp.*, 91 USPQ2d at 1941. Whether Opposer intended to assert its prospective registration against others' use of the mark for dance costumes was not relevant to whether its application should be approved for publication. Moreover, although intent may be averred generally, *see, e.g.*, *King Automotive, Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 212 USPQ 801, 802 (CCPA 1981) and *Daimlerchrysler*, 94 USPQ2d at 1088, the amended counterclaim neither generally alleges intent to deceive the USPTO, nor pleads supporting facts from which we may reasonably infer that Opposer intended to deceive the USPTO, about its future intentions concerning the registration it sought. *See generally Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 91 USPQ2d 1656, 1668 (Fed. Cir. 2009) (allegation of fraud on the USPTO "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO"); *King Automotive*, 212 USPQ at 803. ("Rule 9(b) requires that the pleadings

9

contain explicit rather than implied expression of the circumstances constituting fraud.").

In view of the foregoing, Applicant's fraud counterclaim fails to state a claim upon which relief can be granted as to any of the three pleaded registrations. Accordingly, Opposer's motion to dismiss Applicant's "fraud claim" (paragraphs 40-54 of its Counterclaim) is **granted**.[10]

## II. *"No Bona Fide Use"*

Applicant seeks cancellation of U.S. Reg. Nos. 3896673 and 3927877 on the ground of "lack of *bona fide* use" of the marks therein.[11] With respect to Reg. No. 3896673, Applicant alleges that Opposer's website, www.venumfight.com, does not display or offer for sale any of the goods in International Classes 24 and 26 which are set forth in the registration; therefore, "Opposer is unable to claim that its website constitutes either actual or technical use of its VENUM AND DESIGN mark on its listing of goods" in classes 24 and 26 (¶¶ 62 and 63). Applicant urges that "Opposer cannot claim that it has used its VENUM AND DESIGN mark on any of its

---

[10] In granting a Fed. R. Civ. P. 12(b)(6) motion, the Board often will allow the party in the position of plaintiff an opportunity to file an amended pleading that meets the applicable standard. *See Intellimedia Sports Inc. v. Intellimedia Corp.,* 43 USPQ2d 1203, 1208 (TTAB 1997); *Miller Brewing Co. v. Anheuser-Busch Inc.*, 27 USPQ2d 1711, 1714 (TTAB 1993); and TBMP § 503.03 (June 2014). But leave to replead is inappropriate here. This is Applicant's second attempt to plead its counterclaims, and we can perceive no theory by which the recited facts could be plausibly alleged to constitute fraud. Repleading these allegations would be futile. *See Pure Gold, Inc. v. Syntex (U.S.A.) Inc.*, 221 USPQ 151, 154 (TTAB 1983) ("Although it is the general practice of the Board to allow a party an opportunity to correct a defective pleading, in the instant case leave to amend the pleading would serve no useful purpose"), *aff'd*, 739 F.2d 624, 222 USPQ 741 (Fed. Cir. 1984).

[11] Applicant did not plead any counterclaim on this ground with respect to Opposer's pleaded Registration No. 4017907.

goods listed in Classes 24 and 26" (¶64); and Opposer's nonuse of the mark on such goods is not justifiable (¶ 75). In view thereof, Applicant contends that U.S. Reg. No. 3896673 should be cancelled. (*Id.*).

With respect to U.S. Reg. No. 3927787, Applicant likewise pleads that Opposer does not display or offer on its website either "kimonos or sports shoes, especially for the practice of martial arts"; therefore, "Opposer is unable to claim that its website constitutes either actual or technical use of its VENUM AND DESIGN mark on fabrics [*sic*]" (¶ 70); and "Opposer cannot claim that it has used its VENUM AND DESIGN mark on kimonos or sports shoes, especially for the practice of martial arts" (¶ 72).[12] Accordingly, Applicant alleges that Opposer is not entitled maintain its registration for "kimonos or sports shoes, especially for the practice of martial arts" (¶ 74).

As noted, *supra* (at notes 3 and 4), U.S. Reg. Nos. 3896673 and 3927877 were issued based on requests for extension of protection filed under Trademark Act Section 66(a), 15 U.S.C. § 1141f(a).[13] Use of the applied-for mark in United States commerce is not a prerequisite to registration of a mark filed under Section 66(a); *see* Trademark Act Section 68(a)(3), 15 U.S.C.

---

[12] Applicant also alleges that Opposer did not submit any evidence of use of its VENUM AND DESIGN marks during the prosecution of the applications underlying the two referenced registrations (¶¶ 61, 69). An alleged error of the Examining Attorney in accepting a specimen of use is not a valid ground for opposition or cancellation, although a plaintiff may allege that the applicant's mark was not actually in use when such use was required. *Century 21 Real Estate Corp. v. Century Life of Am.*, 10 USPQ2d 2034, 2035 (TTAB 1989) (the adequacy of specimens is solely a matter of *ex parte* examination).

[13] The certificate of extension of protection issued under Trademark Act Section 69(a), 15 U.S.C. § 1141i(a), may be referred to as a "registration" or a "registered extension of protection" or a "section 66(a) registration." 37 C.F.R. § 7.25(c).

§ 1141h(a)(3) ("Extension of protection shall not be refused on the ground that the mark has not been used in commerce."). Thus, when directed to a mark registered under Section 66(a), a claim of cancellation due to nonuse is legally insufficient. Applicant, however, also incorporates paragraphs 56 through 75 (regarding "no *bona fide* use") into its allegations regarding abandonment (¶ 76). Even though the allegations in paragraphs 56 through 75 do not constitute a cognizable claim of nonuse as to Reg. Nos. 3896673 and 3927877, we will consider these allegations in our analysis, *infra*, of Applicant's claim of abandonment. Thus, to the extent Applicant has sought to allege a claim of nonuse prior to registration separate from its abandonment claim, Opposer's motion to dismiss is **granted**.

## III. *"Abandonment"*

Applicant's abandonment counterclaim also concerns only U.S. Reg. Nos. 3896673 and 3927877, and comprises, in relevant part, the following allegations:

- Opposer has not used its VENUM and design mark on the goods in Classes 24 and 26, or on kimonos and sport shoes for the practice of martial arts in Class 25, "since [Opposer] stated its use of same in its respective applications filed on November 24, 2008" (¶ 78);[14]

- Five years have passed since Opposer filed the applications underlying the two registrations sought to be cancelled and no use has been made

---

[14] In fact, Opposer did not allege use of its marks in the subject applications. As discussed *infra*, insofar as the applications were filed under Trademark Act Section 66(a), the applications do not require (or even provide for) a statement that the mark is in use in the United States or elsewhere.

by Opposer of its VENUM and design mark on the referenced goods (¶ 79);

- Opposer does not display or offer for sale any of the goods identified in International Classes 24 and 26, nor does it display or offer for sale the kimonos and sport shoes for the practice of martial arts in International Class 25 (¶¶ 62, 63, 70 and 72);

- Opposer has abandoned its trademark rights for its VENUM and design mark on the referenced goods (¶ 80); and

- Therefore, U.S. Reg. No. 3896673 should be cancelled in its entirety and U.S. Reg. No. 3927787 should be cancelled with respect to kimonos and sports shoes for use in martial arts (*id.*).

In order to set forth a sufficient claim to cancel the registration of a mark on grounds of abandonment, the plaintiff must plead ultimate facts pertaining to the alleged abandonment, thus providing fair notice to the defendant of plaintiff's theory of abandonment. *Otto Int'l Inc. v. Otto Kern GmbH*, 83 USPQ2d 1861, 1863 (TTAB 2007). *See also Clubman's Club Corp. v. Martin*, 188 USPQ 455, 456 (TTAB 1975). In this context, a mark is abandoned "[w]hen its use has been discontinued with intent not to resume such use. … Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." Trademark Act Section 45, 15 U.S.C. § 1127. Therefore, to adequately plead such a claim, a plaintiff must recite facts which, if proven, would establish at least three consecutive years of nonuse, or alternatively, a period of nonuse less than three years coupled with proof of intent not to

resume use. *Imperial Tobacco Ltd. v. Philip Morris Inc.*, 899 F.2d 1575, 14 USPQ2d 1390 (Fed. Cir. 1990).

When an applicant relying on use in commerce as a basis for registration under Trademark Act Section 1, 15 U.S.C. § 1051, ceases use of its mark prior to the issuance of the registration with no intent to resume use, the application or registration is subject to a claim of abandonment in an opposition or cancellation proceeding. In such a case it is appropriate to include in the period of nonuse any pre-registration nonuse subsequent to that applicant's declaration of use.[15] *See ShutEmDown Sports, Inc. v. Lacy*, 102 USPQ2d 1036, 1042 (TTAB 2012) (for registration issued from Section 1(a)-based application, three-year period of nonuse measured from respondent's filing date); and *Consolidated Cigar Corp. v. Rodriguez*, 65 USPQ2d 1153, 1155 (TTAB 2002) (holding that for an application based on Trademark Act Section 1(b), plaintiff cannot assert a three-year period of nonuse that began prior to defendant's filing of its allegation of use).

However, in this case, the registrations sought to be cancelled were filed pursuant to Trademark Act Section 66(a), 15 U.S.C. § 1141f(a). Unlike applications filed under Section 1, an applicant under Section 66(a) is not required to use its mark in United States commerce (or declare that the mark is in such use) at *any* time prior to registration. *See* Trademark Act Section

---

[15] An application filed under Trademark Act Section 1(a) includes a declaration that the mark is in use at the time of filing. The mark in an application under Trademark Act Section 1(b) need not be in use upon filing, but the application must be amended to assert such use prior to registration, either through an Amendment to Allege Use filed prior to publication of the mark, or a Statement of Use filed after the Notice of Allowance. *See* Trademark Act Sections 1(b)-(d).

68(a)(3), 15 U.S.C. § 1141h(a)(3); *cf.* Trademark Act Section 66(a), 15 U.S.C. 1141f(a) (requiring a declaration of "*bona fide* intention to use the mark in commerce"). Nonetheless, once a registration issues, it is treated much the same as any other registration on the Principal Register. Trademark Act Section 69(b); 15 U.S.C. § 1141i(b) (extension of protection under the Madrid Protocol has the same force and effect as a registration on the Principal Register). And like all registrants, a Section 66(a) registrant must use the registered mark in commerce in order to avoid abandonment of its registration. *Saddlesprings, Inc. v. Mad Croc Brands, Inc.*, 104 USPQ2d 1948, 1951 (TTAB 2012). Therefore, the question at issue is: *What is the earliest point in time from which the period of nonuse may be measured for an abandonment claim with respect to a Section 66(a) registration?* Inasmuch as there is no Board precedent, nor guidance from our primary reviewing court on this issue, we look to how an abandonment claim must be pleaded and proved for a Section 44(e) registration, which is similar to a registration under Trademark Act Section 66(a) insofar as use of the applied-for mark is not required prior to registration.

In *Imperial Tobacco*, the Court of Appeals for the Federal Circuit held that for a registration issued under Section 44(e) of the Trademark Act (with the underlying application based on a foreign registration), the period of nonuse which constitutes *prima facie* evidence of abandonment does not begin until the registration issues. *Imperial Tobacco*, 14 USPQ2d at 1395 ("A Section 44(e) registrant is merely granted a dispensation from actual use

prior to registration, but after registration, there is no dispensation of use requirements. If the registrant fails to make use of the registered mark for two years,[16] the presumption of abandonment may be invoked against that registrant, as against any other.") (bracketed footnote added). Thus, for a registration under Trademark Act Section 44(e), the three-year period of nonuse that constitutes *prima facie* evidence of abandonment begins no earlier than the date of registration. Further, in *Imperial Tobacco*, the Federal Circuit looked at the period "from the date of registration up to the time the petition [to cancel] was filed" in determining whether or not a genuine dispute existed as to Imperial's abandonment of its mark. *Imperial Tobacco*, 14 USPQ2d at 1392.

The question raised in the present case, as to the measurement of a period of nonuse, is closely analogous to the one addressed in *Imperial Tobacco*. Because use is not required for an application filed under Trademark Act Section 66(a), we hold that in order to sufficiently plead a claim for cancellation of a Section 66(a) registration on grounds of abandonment for nonuse, the plaintiff must allege, as of the date the claim is filed, either:

> (a)    three or more consecutive years of nonuse commencing no earlier than the date on which the registration was issued; or,

> (b)    if the period of non-use commencing no earlier than the date of registration and extending to the filing date of the claim is less than three years, facts supporting nonuse after the date of registration, coupled with an intent not to resume use.

---

16 The Trademark Act was amended, effective January 1, 1996, to provide that nonuse for *three* consecutive years shall be *prima facie* evidence of abandonment. P.L. 103-465 §§ 521, 523, 108 Stat. 4809 (1994).

*Cf. Rivard v. Linville*, 133 F.3d 1446, 45 USPQ2d 1374, 1376 (Fed. Cir. 1998) ("Where a registrant has never used the mark in the United States because the registration issued on the basis of a foreign counterpart registration, … cancellation is proper if a lack of intent to commence use in the United States accompanies the nonuse.") (*citing Imperial Tobacco*, 899 F.2d at 1582, 14 USPQ2d at 1395).

In view of our holding regarding the date on which the period of nonuse may begin for a Section 66(a) registration, we find that Applicant has not pleaded a *prima facie* case of abandonment. The basis for Applicant's counterclaim is that Opposer does not display or offer for sale under its VENUM and design mark some or all of its identified goods on its website. The record shows that Reg. No. 3896673 issued on December 28, 2010, that Reg. No. 3927787 issued on March 8, 2011, and that Applicant filed its amended counterclaims on December 13, 2013. As discussed, we do not consider any time prior to the issuance of a Section 66(a) registration as constituting a period of nonuse for purposes of abandonment. Therefore, because both of Opposer's registrations were less than three years old when Applicant's abandonment counterclaim was filed, the presumption of intent to abandon pursuant to Trademark Act Section 45 arising from nonuse for three consecutive years does not apply, and the counterclaim is insufficient absent an allegation of Opposer's intent not to commence use of its registered marks. Because Applicant pleaded no facts from which we could conclude

that Opposer does not intend to commence use of its registered marks, the counterclaim fails to state a claim upon which relief can be granted.

Accordingly, Opposer's motion to dismiss is **<u>granted</u>** with respect to Applicant's abandonment counterclaim. Nonetheless, Applicant is allowed until **THIRTY DAYS** from the mailing date of this order to submit a sufficient amended abandonment claim with respect to Registration Nos. 3896673 and 3927787 and recently issued Reg. No. 4574014, should it be able to do so.

To summarize, Opposer's motion to dismiss for failure to state a claim is granted with prejudice with respect to Applicant's counterclaims based on fraud and "no bona fide use." Opposer's motion is granted as to Applicant's abandonment counterclaim, with leave to replead.

Proceeding Remains Suspended

This proceeding remains **<u>suspended</u>**. Applicant is allowed until **THIRTY DAYS** from the mailing date of this order to submit a second amended counterclaim of abandonment, failing which that counterclaim shall be given no further consideration. Should Applicant submit and serve a second amended abandonment counterclaim, Opposer is allowed until **THIRTY DAYS** from the date of service of the second amended counterclaim to serve on Applicant and file with the Board its answer to Applicant's second amended counterclaim. The proceeding will be resumed and trial dates shall be reset as appropriate after the time for receipt of Applicant's response to this order.

�ધ✧✧